**Maxcimo SCOTT and Jay Ensor, et al., on behalf of themselves and all others similarly situated, Plaintiffs,**

v.

**CHIPOTLE MEXICAN GRILL, INC., Defendant.**

No. 12–CV–08333 (ALC)(SN).

United States District Court, S.D. New York.

Signed May 7, 2015.

Arsenio David Rodriguez, Brian Scott Schaffer, Eric Joshua Gitig, Frank Joseph Mazzaferro, Joseph A. Fitapelli, Fitapelli & Schaffer LLP, New York, NY, Gregg I. Shavitz, Shavitz Law Group, P.A., Boca Raton, FL, Julia Rabinovich, Outten & Golden, LLP, San Francisco, CA, Justin Mitchell Swartz, Melissa Lardo Stewart, Naomi Briana Sunshine, Ossai Miazad, Outten & Golden, LLP, New York, NY, Paul W. Mollica, Outten & Golden LLP, Chicago, IL, for Plaintiffs.

Abigail Nitka, Jean Claude Mazzola, Louis Matthew Grossman, Messner Reeves LLP, Brian Daniel Murphy, Seyfarth Shaw L.L.P., Lisa M. Lewis, Richard J. Simmons, Sheppard, Mullin, Richter & Hampton, LLP, New York, NY, Andrew A. Smith, Bruce A. Montoya, John Karl Shunk, Messner & Reeves LLC, Scott L. Evans, Messner Reeves, Denver, CO, for Defendant.

**ORDER**

SARAH NETBURN, United States Magistrate Judge:

On March 27, 2015, the Court issued a Memorandum and Order (the "March 27 Order") (ECF No. 942) granting in part and denying in part the plaintiffs' motion to compel the production of certain documents. In relevant part, the Court ruled that the report of consultant Cinda Daggett (the "Daggett Report") was not privileged because Daggett was not an agent of Messner Reeves LLC, Chipotle's counsel at the time. On April 21, 2015, Chipotle filed its objections to the March 27 Order pursuant to Rule 72(a) of the Federal Rules of Civil Procedure (ECF No. 966–68). That same day, the parties also appeared before me for a telephone conference at which Chipotle raised a new basis to assert the attorney-client privilege over the Daggett Report, and requested permission to file a motion for post-judgment relief under Federal Rule of Civil Procedure 60(b). The Court permitted short letter submissions, which were filed by Chipotle on April 22, 2015 (ECF No. 970), and the plaintiffs on April 24, 2015 (ECF No. 971).

In its motion, Chipotle seeks relief from the March 27 Order insofar as it found that the Daggett Report was not privileged. In support of its motion, Chipotle attaches two exhibits: (A) an e-mail chain between Daggett and John Shunk, an attorney at Messner, and (B) an unsigned and blank confidentiality agreement that Chipotle alleges it sent to Daggett before engaging her services. In opposition, the plaintiffs argue that (1) Rule 60(b) is inapplicable here; (2) Chipotle has not presented newly discovered evidence within the meaning of the Rule; and (3) even if it had, the March 27 Order is still correct.

The Court finds that Chipotle's motion is procedurally improper, its new evidence is

unpersuasive, and Chipotle has not shown that the Daggett Report was privileged. For the reasons stated below, Chipotle's motion is denied on procedural grounds and on the merits.

## I. Procedural Issues

 Chipotle bases its motion on Rule 60(b), which states: "On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons ...," [1] The relevant bases for Chipotle's motion, were it to be procedurally valid, would be newly discovered evidence, under Rule 60(b)(2), or the rule's catchall provision, Rule 60(b)(6). "By its own terms, Rule 60(b) applies only to judgments that are final." *Transaero, Inc. v. La Fuerza Aerea Boliviana*, 99 F.3d 538, 541 (2d Cir.1996); *see generally* 11 Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 2852 (2015). A discovery order related to the attorney-client privilege is in no way a "final judgment," and Chipotle has not argued anything to the contrary.[2] Accordingly, Chipotle may not bring this motion to challenge a discovery ruling under Rule 60(b).

 The district court, however, "is vested with the power to revisit its decisions before the entry of final judgment and is free from the constraints of Rule 60 in so doing." *Transaero, Inc.*, 99 F.3d at 541. "[T]he qualifying word 'final' emphasizes the character of the judgments, orders or proceedings from which Rule 60(b) affords relief; and hence interlocutory judgments are not brought within the restrictions of the rule, but rather they are left subject to the complete power of the court rendering them to afford such relief from them as justice requires." Fed. R.Civ.P. 60 advisory committee note. *See also Wanamaker v. Columbian Rope Co.*, 907 F.Supp. 522, 526–27 (N.D.N.Y.1995) (citing committee note and discussing distinction between review of final judgments and interlocutory orders) *aff'd on other grounds*, 108 F.3d 462 (2d Cir.1997). Thus, although the March 27 Order is not a final judgment, the Court could review it under its inherent powers.

 Given the merits of Chipotle's motion, which are discussed below, the Court would be well within its discretion to decline to exercise its inherent power to revisit the March 27 Order. The exercise of its discretion in this manner would be particularly appropriate here, where Chipotle has already filed Rule 72 objections to the very same March 27 Order, which are pending before the Hon. Andrew L. Carter, Jr. It is unfair to the plaintiffs to allow Chipotle to seek multiple "bites at the apple" by effectively appealing the same order twice.

## II. Chipotle's New Evidence

Despite finding that there is no procedural basis for Chipotle to bring its application to the Court, the Court turns to the merits. Chipotle offers two "newly discovered" documents in evidence: (A) e-mails between Daggett and Shunk; and (B) an unsigned blank confidentiality agreement that Chipotle allegedly gave to Daggett. Chipotle argues that these documents, which it received from Shunk after April

---

**1.** Chipotle does not attempt to bring its application under Local Civil Rule 6.3 because the 14–day deadline for reconsideration expired April 10, 2015.

**2.** The only case that Chipotle cites to support its Rule 60(b) application is one where the motion was brought following a final judgment. *See Crystal Waters Shipping Ltd. v. Sinotrans Ltd. Project Transp. Branch*, 633 F.Supp.2d 37, 40 n. 1 (S.D.N.Y.2009).

14, 2015, demonstrate that Daggett was, in fact, within the cone of privilege.

██ The e-mails in Exhibit A do not demonstrate, as Chipotle contends, that the Daggett Report was used by Messner to provide legal advice to Chipotle. As explained in more detail in my previous order, the attorney-client privilege applies to an attorney's agent only if the agent is providing aid that is *necessary* in order for the attorney to render legal advice. *See United States v. Kovel*, 296 F.2d 918 (2d Cir.1961). The first email is from Daggett asking Shunk whether she should send her Report to him or to Chipotle. Defs. Mot. Ex. A. at 1, ECF No. 970. This shows that it was at least unclear to Daggett whether her Report was for Chipotle or the lawyer's use. Shunk responded in the second email by directing her to send him the Report, adding: "Your work and report are integral to my legal advice, so I consider this as part of the attorney-client relationship." *Id.*

██ Chipotle argues that Shunk's e-mail indicates that the Report was privileged. The attorney-client privilege applies to "(1) a communication between client and counsel that (2) was intended to be and was in fact kept confidential, and (3) was made for the purpose of obtaining or providing legal advice." *In re County of Erie*, 473 F.3d 413, 419 (2d Cir.2007). But "[a] person's subjective belief that the conversation was privileged is not by itself sufficient to establish the privilege." *United States v. Sabri*, 973 F.Supp. 134, 140 (W.D.N.Y.1996) (citing *United States v. Keplinger*, 776 F.2d 678, 700 (7th Cir. 1985)). And Shunk's *ipse dixit* does not convert non-privileged communication into privileged communication.

Perhaps more significantly, Daggett's e-mail supports the Court's previous reading of the situation, as it indicates that Daggett was providing services to Chipotle (to assist in a business decision), not merely to

Messner. Moreover, the Court returns to its previous finding that no additional written legal advice was offered by Messner after the receipt of the Daggett Report, suggesting that the Daggett Report was not, in fact, integral to Messner's legal advice.

██ The confidentiality agreement at Exhibit B is similarly unpersuasive. First, the agreement is not signed or dated, and nothing in the exhibit links it to Daggett, and so it is not clear that the agreement is at all related to this issue. *See* Defs. Mot. Ex. B., ECF No. 970. Even assuming *arguendo* that it was indeed sent to Daggett and that she later signed it, that too merely supports the Court's understanding that Daggett was working directly for Chipotle. The agreement is a form contract from Chipotle, not Messner. Were Daggett working exclusively for Messner, the agreement would more likely be one between her and the law firm. The terms of the agreement further support that Daggett was working for Chipotle. It recites that the party, here presumably Daggett, is "enter[ing] into a business relationship" with Chipotle, and authorizes Daggett to use "confidential information" for the "tasks or services [Daggett] is providing to Chipotle." *Id.* at 1.

██ Though Chipotle contends that these documents "suppl[y] the information that the Court found missing and dispositive in its March 27 Order," Defs. Mot. at 2, it has not submitted anything that indicates that Messner revised its advice in light of the Daggett Report. Chipotle cites the deposition testimony of Chipotle human resources executive Kristen Dominguez that Chipotle received the Daggett Report as part of Messner's advice. Yet neither Chipotle's new evidence nor its amended privilege log, which the Court reviewed in preparing the March 27 Order, indicate that any new advice followed

the Report. Because the attorney-client privilege "stands in derogation of the public's right to every man's evidence ... it ought to be strictly confined within the narrowest possible limits consistent with the logic of its principle." *In re Grand Jury Proceedings*, 219 F.3d 175, 182 (2d Cir.2000) (internal quotation marks and citation omitted). Chipotle's newly proffered arguments and evidence, alone, are not enough to show that the Daggett Report constituted part of Messner's legal advice to Chipotle.

### III. The Court's Previous Analysis Remains Unchanged

 Chipotle's other arguments in favor of reconsideration are also unavailing. As explained above, Chipotle has not provided evidence that suggests that the Daggett Report was anything more than business advice. As explained more fully in the March 27 Order, under *Kovel* and its progeny, an attorney's agent's communications do not fall under the attorney-client privilege unless she is communicating with the attorney in confidence and in a way that is necessary for the attorney to render legal advice to the client. The classic example is the accountant in *Kovel* who interpreted complex financial figures for an attorney. *See* 296 F.2d at 922.

Chipotle's new evidence does not alter the Court's previous analysis, as nothing Chipotle has presented indicates that the Daggett Report was more necessary to Messner than previously believed. Chipotle's claim that there is no evidence that anyone at Messner or Chipotle was qualified to perform a job function analysis rings hollow given that Chipotle has its own human resources department, and that Daggett is herself a human resources consultant. In any event, it is Chipotle's burden to prove that Daggett was necessary to Messner, and not the plaintiff's burden to disprove it. *See In re Grand*

*Jury Subpoena Dated Jan. 4, 1984*, 750 F.2d 223, 224 (2d Cir.1984) (party asserting privilege bears the burden of establishing facts to prove "the essential elements of the privileged relationship"); *see also United States v. Ackert*, 169 F.3d 136, 139 (2d Cir.1999) (third party involvement must be necessary "to improve the comprehension of the communications between attorney and client").

Accordingly, for both procedural reasons and on the merits, Chipotle's motion to be relieved from the March 27 Order is DENIED.

**SO ORDERED.**